IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SIONE FINEFEUIAKI, #A1065183, | CIV. NO. 18-00249 DKW-KJM |
| Plaintiff, | ORDER DISMISSING COMPLAINT IN PART WITH LEAVE TO AMEND |
| vs. | |
| MAUI CMTY. CORR. CTR. STAFF AND AFFILIATES, | |
| Defendants. | |

## I. **INTRODUCTION**

Pro se Plaintiff Sione Finefeuiaki is a pretrial detainee incarcerated at the Maui Community Correctional Center ("MCCC").[1] Finefeuiaki claims that seven unidentified MCCC "Staffs and Affiliates" ("Defendants" or "MCCC Staff") violated his constitutional rights when they denied him safe custody, housing, religious materials, mail, medical care, and family contact. Compl., ECF. No. 1.

For the following reasons, the Complaint is DISMISSED in part pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(a-b). Specifically, Finefeuiaki fails to state a claim in Counts IV, V, and VI and those claims are DISMISSED without

---

[1]The court takes notice that Finefeuiaki is awaiting trial in *State v. Finefeuiaki*, 2CPC-18-0000090 (Haw. 2d Cir. Ct. 2018), and *State v. Finefeuiaki*, 2CPC-17-0000945 (Haw. 2d Cir. Ct. 2017), avail. at: www.courts.state.hi.us. (last visited July 18, 2018). *See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992); Fed. R. Evid. 201(b).

prejudice. Finefeuiaki states a claim in Counts I-III and VII, and those claims may be served when the appropriate Defendants are identified.

Finefeuiaki may file an amended pleading that cures the deficiencies in those claims dismissed without prejudice on or before August 27, 2018. In the alternative, Finefeuiaki may notify the court in writing on or before August 27, 2018 that he elects to stand on his claims in Counts I-III and VII, and after he identifies the MCCC Staff members allegedly liable for these claims, the court will direct service.

## II. **STATUTORY SCREENING**

The court is required to conduct a pre-Answer screening of Finefeuiaki's pleadings pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a). The court must dismiss a complaint or claim that is frivolous, malicious, fails to state a claim for relief, or seeks damages from defendants who are immune from suit. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing § 1915A(b)).

Screening under §§ 1915(e)(2) and 1915A(b) involves the same standard of review as that used under Federal Rule of Civil Procedure 12(b)(6). *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (screening under § 1915(e)(2)); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (screening under

§ 1915A(b)). Under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Rule 12(b)(6), in turn, is read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure. *Zixiang Li v. Kerry*, 710 F.3d 995, 998-99 (9th Cir. 2013). Under Rule 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 does not require detailed factual allegations, but at a minimum, a complaint must allege enough specific facts to provide both "fair notice" of the particular claim being asserted and "the grounds upon which [that claim] rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 & n.3 (2007) (citation and quotation marks omitted); *see also Iqbal*, 556 U.S. at 555 (Rule 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). The "mere possibility of misconduct" falls short of meeting this plausibility standard. *Iqbal*, 556 U.S. at 555; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Pro se litigants' pleadings must be liberally construed, and all doubts should be resolved in their favor. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). Leave to amend must be granted if it appears the plaintiff can correct the defects in the complaint. *Lopez*, 203 F.3d at 1130.

### III. **DISCUSSION**[2]

To state a claim under 42 U.S.C. § 1983, a plaintiff must plead that a defendant, while acting under color of state law, caused a deprivation of the plaintiff's rights created by federal law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). An individual "causes" a constitutional deprivation when he or she (1) "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [the individual] is legally required to do that causes the deprivation"; or (2) "set[s] in motion a series of acts by others which the [individual] knows or reasonably should know would cause others to inflict the constitutional injury." *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978) (citations omitted). Allegations regarding causation "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or

---

[2]Finefeuaki's statements of fact are accepted as true and construed in the light most favorable to him for purposes of screening. *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014) ("*Nordstrom I*").

omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (citations omitted).

**A.     Eleventh Amendment immunity**

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007). Defendants named in their official capacities are subject to suit under § 1983 only "for prospective declaratory and injunctive relief . . . to enjoin an alleged ongoing violation of federal law." *Oyama v. Univ. of Haw.*, 2013 WL 1767710, at *7 (D. Haw. Apr. 23, 2013) (quoting *Wilbur v. Locke*, 423 F.3d 1101, 1111 (9th Cir. 2005), *abrogated on other grounds by Levin v. Commerce Energy Inc.*, 560 U.S. 413 (2010) ); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."); *Ex parte Young*, 209 U.S. 123 (1908).

Because Finefeuiaki seeks damages only and does not allege an ongoing violation of state law, he fails to state a claim for damages against MCCC Staff named in their official capacities. These claims are DISMISSED with prejudice.

**B. Counts I-III: Failure-to-Protect**

On March 29, 2018, at 10:15 p.m., unidentified "backup" MCCC Staff prevented three inmates from entering Finefeuiaki's cell during a lockdown and took these inmates back to their own cell. Compl., ECF No. 1, PagID #6 (Count I). When they asked Finefeuiaki if he was okay, he replied, "No," without further explanation. *Id.* They closed Finefeuiaki's cell door. Five minutes later, the three inmates returned to Finefeuiaki's cell and assaulted him. Finefeuiaki claims that MCCC Staff had opened his door and allowed this to happen. Finefeuiaki was knocked unconscious, his face and upper body were bruised, and his previously fractured spine was reinjured. He was taken immediately to a hospital.

Finefeuiaki returned from the hospital at approximately 3:00 a.m., on March 30, 2018, and was rehoused in his original cell. Finefeuiaki requested a cell within view of a security camera, but was told that the door to the cell that he requested was broken. *See id.*, PageID #7 (Count II).

The next morning, Finefeuiaki again asked to be moved to a different cell several times, because he felt unsafe being housed with convicted inmates when he was a pretrial detainee. His requests were denied. At approximately 10:15 a.m., Finefeuiaki was attacked in the shower by a "close custody and convicted inmate." *Id.*, PageID #8 (Count III). MCCC Staff separated them and took Finefeuiaki back

6

to the hospital. When Finefeuiaki returned, he was placed in an upstairs cell on "safe watch." *Id.*, PageID #9.

The Fourteenth Amendment's Due Process Clause protects pretrial detainees' rights. *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). To state a failure-to-protect claim, a pretrial detainee must show that:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
>
> (2) Those conditions put plaintiff at substantial risk of suffering serious harm;
>
> (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved – making the consequences of the defendant's conduct obvious; and
>
> (4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1067-68, 1071 & n.4 (9th Cir. 2016) (*en banc*), *cert. denied*, 137 S. Ct. 831 (2017). This requires "more than negligence but less than subjective intent – something akin to reckless disregard." *Id.*

Counts I-III state colorable failure-to-protect claims against MCCC Staff and may be served when Finefeuiaki identifies the MCCC Staff who are liable for his claims.

## C. Counts IV and VI: Conditions of Confinement[3]

On April 5, 2018, Finefeuiaki was taken downstairs to be rehoused, but when he arrived, he said that he felt unsafe and wanted to remain upstairs in the safe housing cells. MCCC Staff escorted Finefeuiaki back upstairs to Cell #2, where he was housed with two other inmates. Finefeuiaki says that Cell #2 was: (1) a two-man cell that was not meant for three inmates; (2) too cold; (3) lacked running water in the sink (although it had a functioning toilet); and (4) monitored by security cameras. *See* Compl., ECF No. 1, PageID #9 (Count IV). He further complains that their bedding and all other items (except their clothes) were removed from the cell between 8:00 a.m. and 8:00 p.m., and they could not receive mail or contact their families during that time. *Id.*, PageID #11 (Count VI). Finefeuiaki remained in Cell #2 until Monday, April 9, 2018.

A pretrial detainee may be subject to the conditions of the jail as long as those conditions do not amount to punishment. *Bell*, 441 U.S. at 536-37; *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 (2015) ("[P]retrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and

---

[3]Although the Ninth Circuit has not expressly extended the objective deliberate indifference standard to *all* pretrial detainee conditions of confinement claims, beyond excessive force, failure-to-protect, and denial of medical care claims, *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1120, 1124 (9th Cir. April 30, 2018) strongly suggests that it will. *Compare*, *Darnell v. Pineiro*, 849 F.3d 17, 36 (2d Cir. 2017) (extending objective deliberate indifference standard to all pretrial detainee conditions of confinement claims).

8

sadistically.'" (citation omitted)). "Unless there is evidence of intent to punish, then those conditions or restrictions that are reasonably related to legitimate penological objectives do not violate a pretrial detainee's right to be free from punishment." *Hatter v. Dyer*, 154 F. Supp. 3d 940, 945 (C.D. Cal. 2015) (citing *Block v. Rutherford*, 468 U.S. 576, 584 (1984)).

Finefeuiaki fails to show that being housed in Cell #2 for five days violated his constitutional rights. First, Finefeuiaki was not put in Cell #2 as punishment; rather, he was returned to a safety cell for his protection and at his request.

Second, housing three inmates in a two-inmate cell, by itself, does not state a constitutional violation. *See Rhodes v. Chapman*, 452 U.S. 337, 347-48 (1981) (holding that double- or triple-celling inmates in itself is not unconstitutional). Finefeuiaki alleges no facts that suggest the conditions in Cell #2 were unsafe or unsanitary due to housing three inmates in the cell. He was not denied clothing, bedding, food, sanitation, or clean water for washing and drinking (on request). Finefeuaki fails to show that MCCC Staff were or should have been objectively aware that he faced a substantial risk of serious harm due to the air conditioning in Cell #2 and failed to take steps to alleviate that harm. He therefore fails to state a claim for adverse conditions of confinement related to his housing in Cell #2.

9

Third, although inmates have the right to send and receive mail, *see Nordstrom v. Ryan*, 856 F.3d 1265, 1271-72 (9th Cir. 2017) ("*Nordstrom II*"), and to contact their families subject to reasonable restrictions (via telephone, mail, or visitation), Finefeuiaki does not allege that he was denied *all* mail and family contact while in Cell #2. Rather, he alleges that he was denied mail and contact with his family for five days only between 8:00 a.m. and 8:00 p.m. This limited restriction simply does not arise to a constitutional violation. Counts IV and VI are dismissed without prejudice.

### D. Count V: First Amendment

Finefeuiaki claims that MCCC Staff could not locate his bible, daily bread, and religious handbook during the five days that he was held in Cell #2. It appears that when these items were found, they were given to him.

"[P]risoners retain the protections of the First Amendment" but their "right to freely exercise [their] religion is limited by institutional objectives and by the loss of freedom concomitant with incarceration." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1997) ). The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct that he sincerely believes is

consistent with his faith, but an impingement on an inmate's constitutional rights will be upheld "'if it is reasonably related to legitimate penological interests.'" *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987) ).

Finefeuiaki fails to allege that a substantial burden was placed on the practice of his religion. Simply because MCCC Staff could not find his bible or other religious articles for five days does not, in itself, constitute a substantial burden. *See, e.g., Canell v. Lightner*, 143 F.3d 1210, 1215 (9th Cir. 1998) (intrusions which are "relatively short-term and sporadic" do not constitute a substantial burden). Finefeuiaki does not allege that he was denied the right to practice his religion, attend service, or use a substitute bible until his was found. Nor does he explain how the loss of his religious handbook and "daily bread" for five days substantially burdened the practice of his religion.

Finefeuiaki fails to state a cognizable claim under the Free Exercise Clause of the First Amendment, and Count V is dismissed without prejudice.

**E.     Count VII:  Excessive Force and/or Denial of Medical Care**

Finefeuiaki states that MCCC Staff knew that he had fractured his back before he entered prison. It is also likely that they knew he had been assaulted recently by other MCCC inmates requiring two hospital visits. On April 12, 2018,

11

three days after Finefeuiaki was transferred out of the safety cells, MCCC Staff came to inspect his cell. Finefeuiaki told them that he was in "crazy pain" because of his back and was unable to walk; he requested medical care. Compl., ECF No. 1, PageID #12. Instead, because he could not walk, they ordered him to roll off the bed onto the floor to enable them to conduct a cell search. As he lay on the floor, he was dragged from the cell by his ankles as MCCC Staff searched his cell. After they finished searching, they asked again if he could walk. When Finefeuiaki replied that he could not, they dragged him back inside the cell by his hands and left him on the floor. Finefeuiaki says that inmates and MCCC Staff laughed at him while he lay on the floor.

### 1. *Excessive Force*

The Fourteenth Amendment protects pretrial detainees from the use of excessive force that amounts to punishment. *Kingsley*, 135 S. Ct. at 2473; *see also Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989); *Bell*, 441 U.S. at 535. A plaintiff must show "that the force purposely or knowingly used against him was objectively unreasonable" in light of the facts and circumstances confronting defendants, without regard to defendants' mental state. *Kingsley*, 135 S. Ct. at 2472-73; *see also Graham*, 490 U.S. at 397 (applying an objectively unreasonable standard to a Fourth Amendment excessive force claim arising during an

12

investigatory stop). Because officers are often forced to make split-second decisions in rapidly evolving situations, the reasonableness of a particular use of force must be made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* at 2473-74 (citing *Graham*, 490 U.S. at 396).

Construing the facts in the light most favorable to Finefeuiaki, the court finds that he states a colorable claim for excessive force in violation of the Fourteenth Amendment against the MCCC Staff who ordered him to roll to the floor after he told them he was in extreme pain and could not walk, and then had him dragged into and out of his cell despite their knowledge of his recent attacks from other inmates, previous back injury, and ongoing pain. Even minimal force was not necessary, according to Finefeuiaki, because at no time did he refuse to obey instructions. He was merely limited in his response ability as a result of the medical conditions that he described to MCCC Staff.

This claim may be served and will require a response when Finefeuaki identifies the MCCC Staff involved.

### 2. *Denial of Medical Care*

To the extent that Finefeuiaki alleges the denial of medical care in Count VII, and this is unclear, his claims are evaluated under the Fourteenth

Amendment's objective deliberate indifference standard. *See Gordon v. Cty. of Orange*, 888 F.3d 1118, 1120, 1124 (9th Cir. April 30, 2018) (holding that an objective indifference standard applies to denial of medical care claims and generally to all governmental actions taken against a pretrial detainee); *see also Shorter v. Baca*, — F.3d — , —, 2018 WL 3421091, at *11 (9th Cir. July 16, 2018) (remanding for consideration of a pretrial detainee's medical care claims under *Gordon*'s objective standard).

Finefeuiaki fails to allege sufficient facts to state a claim regarding the denial of medical care, because he does not say that he was denied medical care after the search or that he incurred further injury or pain as a result of the denial of medical care. To the extent that he alleges the denial of medical care, that claim is DISMISSED without prejudice.

## F. Doe Defendants: MCCC Staff and Affiliates 1-7

Rule 10(a) of the Federal Rules of Civil Procedure requires a plaintiff to include the names of the parties sued in the action. As a practical matter, the United States Marshal cannot serve a summons and complaint on an anonymous defendant. The use of doe defendants is therefore disfavored in federal court. *See Gillespie v. Civiletti,* 629 F.2d 637, 642 (9th Cir. 1980).

A plaintiff may refer to unknown defendants as Defendant John Doe 1, John Doe 2, and so on, but he must allege sufficient facts to show how each individual doe defendant violated the plaintiff's constitutional rights. If the plaintiff provides such details, he may then use the discovery process to obtain the names of any doe defendants that he believes violated his constitutional rights and seek leave to amend to name those defendants, unless it is clear that discovery would not uncover their identities, or that the complaint would be dismissed on other grounds. *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing *Gillespie*, 629 F.2d at 642).

Finefeuiaki adequately identifies the MCCC Staff as Doe Defendants for the purposes of commencing this action, because he clearly refers to specific MCCC Staff who took action on identified days in identified places. He is NOTIFIED, however, that his Complaint cannot be served until he actually identifies and names the individual MCCC Staff or Affiliates who are liable for his claims.

## IV. <u>LEAVE TO AMEND</u>

The Complaint is DISMISSED in part. Leave to amend those claims that are dismissed without prejudice is GRANTED as limited above. Finefeuiaki may file an amended complaint on or before August 27, 2018, that cures the deficiencies in claims dismissed without prejudice and identifies MCCC Staff and Affiliates with

15

more particularity. He must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii. Local Rule LR10.3 requires that an amended complaint be complete in itself without reference to any prior pleading. Any amended complaint must be short and plain, comply with Rule 8 of the Federal Rules of Civil Procedure, and be submitted on the court's prisoner civil rights form. An amended complaint will supersede the preceding complaint. *See Ramirez v. Cty. of San Bernadino*, 806 F.3d 1002, 1008 (9th Cir. 2015); LR99.7.10. Defendants not renamed and claims not realleged in an amended complaint may be deemed voluntarily dismissed. *See Lacey v. Maricopa Cty*, 693 F.3d 896, 928 (9th Cir. 2012).

Alternatively, Finefeuiaki may elect to stand on his claims against MCCC Staff in Counts I-III, and VII. On receipt of written notification of such election, or if Finefeuiaki fails to timely submit an amended complaint by August 27, 2018, the court will order the Complaint, as limited, served on the appropriate Defendants MCCC Staff once Finefeuiaki identifies them.[4]

---

[4] By electing to stand on certain claims and have them served, Finefeuiaki is not foreclosed from raising claims dismissed without prejudice in an amended pleading subject to the requirements of Fed. R. Civ. P. 15.

## V. CONCLUSION

(1)  The Complaint is DISMISSED IN PART for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1).  Specifically, Finefeuiaki's claims against all Defendants named in their official capacities are DISMISSED with prejudice.  His claims in Counts IV, V, and VI are DISMISSED without prejudice.

(2)  Finefeuiaki is granted leave to file an amended pleading that cures the noted deficiencies in Counts IV-VI on or before August 27, 2018.

(3)  IN THE ALTERNATIVE, Finefeuiaki may notify the court in writing on or before August 27, 2018, that he shall stand on his claims in Counts I-III and VII, and the court will direct service of those claims when Finefeuiaki adequately names the MCCC Staff and Affiliates allegedly liable for those claims.

///

///

///

(4) The Clerk is DIRECTED to send Finefeuiaki a prisoner civil rights complaint form so that he may comply with the directions of this order if he elects to submit an amended pleading.

IT IS SO ORDERED.

DATED: July 25, 2018 at Honolulu, Hawaii.



/s/ Derrick K. Watson
Derrick K. Watson
United States District Judge

---

*Sione Finefeuiaki v. Maui Cmty, et al.*; Civil No. 18-00249 DKW-KJM; ORDER DISMISSING COMPLAINT IN PART WITH LEAVE TO AMEND

*Finefeuiaki v. MCCC Staffs and Affiliates*, 1:18-cv-00249 DKW-KJM; scrn '18 Finefeuiaki 18-249 dkw (pretr. fail prot. relig. mail 14 amd dsm in part lv amd)